**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MALACO, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-266** |
| **DION NORMAN & DERRICK ORDOGNE** | **SECTION: N** |

# ORDER AND REASONS

Before the Court is Plaintiff Malaco, Inc.'s first Motion for Partial Summary Judgment on Declaratory Judgment Counts 1-4.[1] Defendants Dion Norman and Derrick Ordogne filed a response in opposition,[2] and Malaco replied.[3] For the following reasons, Malaco's first motion for partial summary judgment is **GRANTED**.

## I. Background

This case involves a dispute over the legal rights to two popular New Orleans nightclub songs recorded in the early 1990s: "Where They At" and "Bitches (Reply)." Malaco alleges that Jimi Payton, also known as "DJ Jimi," wrote "Where They At" and created "Reply" through impromptu lyric exchanges with Eglah Devezin, also known as "MC E," during his performances of the song.[4] Defendants dispute this creation story and claim Normal wrote the song lyrics and worked with Ordogne to add music and other features.

In 1992, Payton entered an Exclusive Recording Agreement with Bolden &

[1] Rec. Doc. 31.
[2] Rec. Doc. 34.
[3] Rec. Doc. 35.
[4] Rec. Doc. 18 ¶¶ 7-11; Rec. Doc. 31-4 ¶¶ 2-3 (Exhibit B, Devezin Declaration).

Moorehead, Inc. ("B&M"). Through this agreement Payton gave up his rights and assigned to B&M, doing business as Soulin' Records, all master recordings made or produced pursuant to the agreement and publishing rights for compositions written or co-written by Payton.[5] Devezin also signed an agreement with B&M, through which she waived any rights she may have with respect to the composition or recording of "Reply," in exchange for a single cash payment.[6] She understood that Payton would be considered the sole writer of the composition of "Reply."[7]

In 1992 Soulin' Records released "Where They At" and "Reply." The release identified Dion Norman and Derrick Ordogne as producers and stated "All cuts written by Jimi 'DJ Jimi' Payton.[8] Defendants were aware of this release in 1992 and saw the release with the representations that they were producers and Payton was the writer.[9]

B&M subsequently entered into a Production Agreement by which it assigned SOH Distributing Network (a) 100% of its recording rights and (b) one-third ownership of its publishing rights, with a Letter of Inducement in which Payton represented and agreed that B&M had the right to enter into the agreement with respect to his services and obligations.[10] SOH then released "Where They At" and "Reply" under its Avenue Records musical label.[11] Using the same language as the Soulin' Records release, this release once again identified Payton as the sole author and Norman and Ordogne as producers. Also in 1992, SOH obtained a registered copyright for the sound recording

---

[5] Rec. Doc. 31-5 §§ 10-13, 17 (Exhibit C, Exclusive Recording Agreement).
[6] Rec. Doc. 31-4 ¶ 5 (Exhibit B, Devezin Declaration).
[7] *Id.*
[8] Rec. Doc. 31-7 (Exhibit E, Photos of Record Releases).
[9] Rec. Doc. 31-8 at 110:22-111:14 (Exhibit F, Norman Deposition); Rec. Doc. 31-3 at 162:22-163:8 (Exhibit A, Ordogne Deposition).
[10] Rec. Doc. 31-9 ¶¶ 7, 18 & Ex. A (Exhibit G, Production Agreement & Inducement Letter).
[11] Rec. Doc. 31-7 (Exhibit E, Photos of Record Releases).

and musical composition for the released songs.[12] In 2018, SOH and Malaco entered into a Sale and Assignment of Master Recordings and Related Assets by which SOH broadly sold all of its sound recording, publishing, and related rights to Malaco.[13] This agreement also assigned Malaco SOH's copyright interests in these works.[14]

In 1994, Defendants sued B&M and other defendants for producer royalites for "Where They At" and "Reply."[15] In the 1994 petition, Defendants refer to themselves as producers, and state that Payton wrote the song "Where They At."[16] The petition also states that Defendants "spontaneously produced" "Reply."[17]

## II. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "An issue is material if its resolution could affect the outcome of the action."[19] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[20] All reasonable inferences are drawn in favor of the nonmoving party.[21] There is no genuine issue of material fact if, even

---

[12] Rec. Doc. 31-10 (Exhibit H, Avenue 1208 Copyright). The copyright registration contains the description "1 cassette" on which the copyright symbol and sound recording copyright symbol was depicted along with "Avenue Distribution," *i.e.*, the Avenue Distribution release.
[13] Rec. Doc. 31-12 (Exhibit J, Sale and Assignment).
[14] *Id.*
[15] Rec. Doc. 31-6 (Exhibit D, 1994 Petition).
[16] *Id.* ¶ 2.
[17] *Id.* ¶ 9.
[18] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[19] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[21] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[22]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[23] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[24]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[25] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be

---

[22] *Smith v. AmedisysInc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[23] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,1264-65 (5th Cir. 1991) (citation modified).
[24] *Celotex*, 477 U.S. at 322-24.
[25] *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727.1 (2016) (discussing *Celotex* summary-judgment burden of proof standard).

useless, and the moving party is entitled to summary judgment as a matter of law.[26] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[27] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[28] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[29] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[30] Still, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the

---

[26] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[27] *Celotex*, 477 U.S. at 332-33.
[28] *Id.*
[29] *Id.* at 332 n.3.
[30] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

claim."[31] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[32]

## III. Analysis

In the present motion, Malaco moves for partial summary judgment on declaratory judgement counts one through four.[33] Malaco argues that summary judgment is proper because any ownership rights Defendants allegedly possessed are now time-barred by the Copyright Act's statute of limitations.[34] Malaco also argues that it is the sole owner of the sound recording rights and 33% owner of the publishing rights to the two songs at issue.[35]

### A. Malaco presented competent summary judgment evidence.

Defendants' first argument in opposition to Malaco's motion is an evidentiary challenge. Defendants argue that Malaco's use of the Defendants' 1994 petition[36] is not proper summary judgment evidence because it was not verified by Defendants.[37] Defendants also argue that Devezin's declaration[38] is not competent summary judgment evidence because she lacks personal knowledge of the recording and production of "Where They At" and "Reply" and her declaration lacked facts regarding the musical composition and sound recording of the works.[39] Finally, Defendants object to Malaco's use of Exhibits C (Exclusive Recording Agreement), E (photos of record

---

[31] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[32] *Id.* (citation modified).
[33] Rec. Doc. 31.
[34] Rec. Doc. 31 at 2.
[35] *Id.*
[36] Rec. Doc. 31-6 (Exhibit D, 1994 Petition).
[37] Rec. Doc. 34 at 3.
[38] Rec. Doc. 31-4 (Exhibit B, Devezin Declaration).
[39] Rec. Doc. 34 at 3-6.

releases), G (Production Agreement), H (copyright registration), J (Sale and Assignment for master recordings and related assets), K (copyright registration), and L (copyright registrations), stating they are in violation of Rule 56.[40]

Malaco argues Fifth Circuit precedent holds that summary judgment evidence does not need to be authenticated, only that it be capable of being presented in a form that would be admissible in evidence.[41] Rule 56 expressly contemplates a party supporting assertions of fact with "documents … [and] other materials," rather than limiting parties to affidavits and declarations. For that reason, Malaco argues, the 1994 petition is admissible evidence under Rule 56, but even more so because Defendants testified that everything in the petition was true and correct.[42] Malaco states Devezin's declaration is proper because it was based on her personal knowledge of Payton's authorship of the songs and her waiver of her own rights to "Reply"—not the recording session of "Where They At" or other matters not raised therein.[43]

The Court agrees with Malaco that the challenged exhibits are competent summary judgment evidence. Following amendments in 2010, Rule 56 allows "the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant."[44] Rule 56 broadly states that a party may support

---

[40] *Id.*
[41] Rec. Doc. 35 at 2-3.
[42] *Id.*; Rec. Doc. 35-2 at 188:20-22 (Exhibit 2, Norman Deposition); Rec. Doc. 35-1 at 74:4-14 (Exhibit 1, Ordogne Deposition).
[43] Rec. Doc. 35.
[44] *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (citation modified); *see also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).

assertions of fact with affidavits, declarations, documents, and "other materials."[45] The 1994 petition falls under the umbrella of Rule 56 evidence and would likely be admissible at trial.[46] The contractual evidence—the Exclusive Recording Agreement,[47] the Production Agreement and inducement letter,[48] and the Sale and Assignment[49]—is competent evidence because contracts are "one of the more common types of exhibits admitted in civil cases."[50] As for the other objected-to exhibits—the photos of record releases,[51] the Avenue 1208 copyright registration,[52] DJ Jimi's sound recording registration,[53] and the certification of registration[54]—the Court finds these to fall under the "documents" or "other materials" that are allowed under Rule 56, and evidence that would likely be admissible at trial. As for Defendants' objections to Devezin's declaration,[55] the Court also agrees with Malaco that her declaration is based on her personal knowledge of the events, and it is immaterial to her declaration that she was not present during conversations between Payton and Defendants with Marshall Sehorn (B&M) or the "Where They At" recording session.

**B. Defendants' claims of authorship are time-barred.**

Malaco argues, as a matter of law, Defendants are time-barred from any

[45] Fed. R. Civ. P. 56.
[46] *See Cont'l Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971) ("As a general rule the pleading of a party made in another action, as well as pleadings in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein, assuming of course that the usual tests of relevancy are met.").
[47] Rec. Doc. 31-5 (Exhibit C).
[48] Rec. Doc. 31-9 (Exhibit G).
[49] Rec. Doc. 31-12 (Exhibit J).
[50] *Maurer*, 870 F.3d at 384.
[51] Rec. Doc. 31-7 (Exhibit E).
[52] Rec. Doc. 31-10 (Exhibit H).
[53] Rec. Doc. 31-13 (Exhibit K).
[54] Rec. Doc. 31-14 (Exhibit L).
[55] Rec. Doc. 31-4 (Exhibit B).

assertions of ownership to sound recording and publishing rights for the two songs at issue.[56] Defendants argue that an authorship claim does not accrue until "the putative author's status as an author is expressly repudiated."[57] Defendants contend that, at the time of the songs' publication, they could not have ascertained their authorship was being disputed because they were listed as producers and a producer can also be an author.[58]

All civil actions under the Copyright Act must be brought within three years after the claim accrued.[59] "[A] copyright claim accrues 'when [the party] knew or had reason to know of the injury upon which the claim is based.'"[60] A copyright ownership claim "'accrues only once, and if an action is not brought within three years of accrual, it is forever barred.'"[61]

It is well established that a party knows or has reason to know that his ownership is being repudiated if a work is published but that party is not appropriately credited. In *Pritchett v. Pound*, for example, the court held defendants' claims accrued when one author asserted sole ownership and when the coauthor "knew the [work] had been published without naming him as a coauthor."[62] Likewise, in *Aalmuhammed v. Lee*, the court held that the plaintiff's authorship was repudiated and the statute of

---

[56] Rec. Doc. 31-2 at 11.
[57] Rec. Doc. 34 at 8.
[58] *Id.* at 9.
[59] 17 U.S.C. § 507(b).
[60] *Jordan v. Sony BMG Music Ent. Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009); *see also Sanchez v. Hacienda Recs & Recording Studio, Inc.,* 42 F. Supp. 3d 845, 851 (S.D. Tex. 2014) (citation modified) (An ownership claim accrues when "plain and express repudiation of co-ownership is communicated to the claimant.").
[61] *Sanchez*, 42 F. Supp. 3d at 851 (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007)).
[62] *Pritchett v. Pound*, No. 4:03-CV-349, 2005 WL 8160965, at *1 (E.D. Tex. Feb. 1, 2005), *aff'd*, 473 F.3d 217 (5th Cir. 2006).

limitations triggered when the movie credits listed him "far below the more prominent names, as an 'Islamic technical consultant.'"[63] Publicly asserting "sole authorship to the world and the plaintiff, including [in] the listed credit on the published work," triggers the three-year limitations period found in the Copyright Act.

Here, the parties do not dispute that Soulin' Records released "Where They At" and "Reply" in 1992, or that this 1992 record identifies Payton as the sole writer and the Defendants as producers.[64] Defendants' sworn deposition testimony demonstrates that both Norman and Ordogne saw this representation when the record was released in 1992.[65] In their depositions, Norman and Ordogne testified that after the 1992 release, B&M was not treating them as coauthors.[66] Similar to the holding in *Pritchett*, if Defendants disagreed with the representations presented in the 1992 release or their related treatment, they should have done so within the following three years.[67] Indeed, Defendants brought suit within the three years following the 1992 release; however, they did so in their capacity as producers.[68] Their 1994 petition sought producer royalties and acknowledges their work only as producers. It also recognizes Payton as the author. Defendants did not claim co-authorship or any other rights or payment.

Defendants seek to avoid the inescapable conclusion that they were on notice

---

[63] 202 F.3d 1227, 1230 (9th Cir. 2020).

[64] Rec. Doc. 31-7 (Exhibit E, Photos of Record Releases). Defendants assert that Soulin' Records was defunct and dissolved; however, that was the name by which B&M was doing business and this fact is not material to whether Defendants were on notice that their authorship was repudiated in 1992.

[65] Rec. Doc. 31-8 (Exhibit F, Norman Deposition at 110:22-111:14 ("Q. And did you see this when it was released in 1992? A. Yes.")); Rec. Doc. 31-3 (Exhibit A, Ordogne Deposition at 162:22-163:8 ("Q. So did you see these at the time, in 1992? A. Yes.")).

[66] Rec. Doc. 31-8 (Exhibit F, Norman Deposition at 32:15-23, 35:10-14 (acknowledging that he was not paid as a writer)); Rec. Doc. 31-3 (Exhibit A, Ordogne Deposition at 85:19-86:8 (acknowledging that he was not treated as a coauthor)).

[67] *Pritchett*, 2005 WL 8160965, at *1.

[68] Rec. Doc. 31-6 (Exhibit D, 1994 Petition).

that their ownership was expressly repudiated by claiming that being a producer means they were also authors. While it is possible for a producer to be considered an author of a sound recording, the release separately identifies those responsible for authorship and production. The record expressly identifies only Payton as having written the songs. Defendants saw this sole recognition of Payton as well as their separate recognition only as producers. They thus were on notice that any authorship they could claim was repudiated. This distinction on the release tracks Defendants' own actions. Again, Defendants did not identify themselves as authors (or anything other than producers), claim authorship rights pursuant to any agreement, or seek any royalties other than producer royalties in their lawsuit in 1994. All of these undisputed facts further confirm that Defendants did not timely assert any co-authorship or co-ownership.

While these facts are sufficient on their own to demonstrate there is no genuine dispute as to when Defendants knew the two songs were being represented as solely written by Payton, that conclusion is further supported by SOH's copyright registration dated April 23, 1992, for sound recording and music for "Where They At." The copyright registration contains the description "1 cassette" on which the copyright symbol and sound recording copyright symbol was depicted, *i.e.*, the Avenue Distribution release. In *Jordan v. Sony BMG Music Entertainment Inc.*, the Fifth Circuit found that plaintiff's claims for co-ownership of sound recordings against Sony were time-barred,[69] finding that certificates of registration were sufficient to provide notice to the

---

[69] *Jordan*, 354 F. App'x at 945-46.

plaintiff that Sony claimed sole ownership of the sound recordings.[70] Thus, SOH's registered copyright is further evidence that Defendants had reason to know that their authorship of the songs was repudiated.[71]

Because Defendants did not claim co-authorship for either "Where They At" and "Reply" within three years of 1992, the law bars them from claiming rights under the Copyright Act now.

## IV. Conclusion

**IT IS ORDERED** that Plaintiff Malaco's first motion for partial summary judgment[72] is **GRANTED**. Malaco is entitled to summary judgment on counts one through four.

**IT IS DECLARED** that Defendants Dion Norman and Derrick Ordogne hold no copyright ownership in the publishing or sound recording rights for "Where They At" and "Bitches (Reply)," as their claims to such rights are time-barred.

New Orleans, Louisiana, this 16th day of September, 2026.

Anna St John

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[70] *Id.*
[71] Rec. Doc. 31-10 (Exhibit H, Avenue 1208 Copyright).
[72] Rec. Doc. 31.